# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **STEVEN DAVIS,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:   2:13-CV-1070-RDP** |
| | } | |
| **CITY OF FULTONDALE, et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## MEMORANDUM OPINION

This matter is before the court on Defendant Belinda Cox's Motion for Summary Judgment.   (Doc. # 93).   The Motion has been fully briefed.   (Docs. # 94, 96 and 97).

Plaintiff asserts a deliberate indifference to serious medical need claim against Defendant Belinda Cox pursuant to 42 U.S.C. § 1983, as well as state law negligence and wantonness claims based on the same events.   (Doc. # 79).

## I.     Relevant Background and Facts[1]

On September 15, 2012, Defendant Cox was working as dispatcher for the Fultondale Police Department.   (Doc. # 79 at ¶ 9).   Just after midnight on that date, Fultondale police

---

[1]  If facts are in dispute, they are stated in the manner most favorable to the non-movant.   *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).   These are the facts for summary judgment purposes only; they may not be the actual facts. *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("'[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [] may not be the actual facts.'" (citation omitted).

The court must note that it has been somewhat frustrated by the manner in which Plaintiff has presented his factual disputes in this case.   Rather than presenting evidence in the record which shows there is a genuine dispute of fact regarding the evidence presented by Defendant Cox, Plaintiff merely argues that the testimony presented is self-serving, and a jury could determine that Defendant Cox and other witnesses are not credible.   (Doc. # 96 at p. 2-8).   This is insufficient to demonstrate that there is a genuine issue of fact for a jury to decide.   Appendix II to the Scheduling Order (Doc. # 46) instructs that, in supporting and responding to summary judgment, "Counsel must state facts in clear, unambiguous, simple, declarative sentences."   (Doc. # 46, Appx. II(D)).   Appendix II further instructs that "[a]ny statements of fact that are disputed by the non-moving party *must be followed by a specific reference to those portions of the evidentiary record upon which the dispute is based*. All material facts set forth in the statement required of the moving party will be deemed to be admitted for summary judgment purposes unless controverted by the response of the party opposing summary judgment."   As stated above, mostly, Plaintiff argues that the evidence presented by Cox may not be believed by a jury.   However, even where he does actually dispute facts, the court's examination of the record cites listed in support of Plaintiff's disputes revealed evidence that did not, in fact, contradict the facts as presented by Defendant Cox.

officers Jim Henderson and David Hale arrested Plaintiff for public intoxication.   (Doc. # 79 ¶¶ 11-12; Doc. # 81-3 p. 21).   Plaintiff was brought to the booking room/holding cell area of the Fultondale Jail at approximately 12:24 a.m.   (Doc. #81-5).   Officers Henderson and Hale testified that they believed that Plaintiff was intoxicated or under the influence of narcotics. (Doc. # 81-2 at 22, 28-29; Doc. # 81-3 p. 22).

Officer Hale tased Plaintiff at 12:26 a.m.   (Doc. #81-5).   Although Cox did not see Henderson tase Plaintiff, she testified that she heard him hit the floor.   (Doc. # 95-2 p. 33).   At 12:27 a.m., Cox looked into the holding cell.   She saw Officer Hale still holding the taser and Plaintiff lying on the floor with the wires still in his chest.   (Doc. # 95-2 p. 34; Doc. #81-5).   Cox left the cell and, within approximately a minute, called for Fultondale Fire & Rescue to come to the jail to attend to someone who had been tased.   (Doc. # 95-1 p. 2).   After Plaintiff was tased, Officer Hale observed that he was breathing, and left the cell.   (Doc. # 81-3).

Officers Henderson and Hale, along with Reserve Officer Randall Posey, remained in the booking room/holding cell area until 12:30 a.m.   (Doc. #81-5).   When the officers exited the booking room, Cox informed the officers that she had called the fire department paramedics to come to the jail.   (Doc. # 95-2 at pp. 45-46).   Cox heard someone comment that Plaintiff was snoring.   (Doc. # 95-2 p. 46; Doc. # 84-2 p. 30-31).   Officer Posey testified that he could hear Plaintiff snoring.   (Doc. # 84-2 p. 30-31).

At 12:33 a.m., the paramedics, Fultondale Fire Department Rescue 71, radioed Cox to report that they were in route to the jail.   (Doc. # 95-3).

Cox's view of the holding cell from her monitor in the dispatch office showed only Plaintiff's legs and feet.   (Doc. # 95-2 p. 48; Doc. #81-5).   As Cox waited for the paramedics to

arrive, she occasionally glanced at the monitor.   Cox testified that Plaintiff appeared to be asleep, which was consistent with what she had heard from one of the officers.   (Doc. # 95-2 p. 47, 60). In Cox's experience, it was not unusual for an inmate to sleep on the floor.   (Doc. # 95-2 p. 61).

Cox did not enter the holding cell to physically check Plaintiff's pulse, nor did she examine whether he was breathing. (Doc. # 95-2 p. 49).   Cox was able to listen to and to communicate with detainees in the holding cells through an intercom. (Dox. # 95-2 p.31).   If she was unable to rouse a detainee by her voice, she could call an officer to go into the cell to check the detainee.   (Doc. # 95-2 p.32).   Cox made no attempt to use the intercom to determine whether Plaintiff was breathing or snoring, nor did she attempt to rouse him.   (Doc. # 95-2 pp.46, 49, 60, 63- 64, 69-70, 75-76).

At approximately 12:35 a.m. the paramedics reported to Cox that they were at the jail, and they arrived inside the booking room/holding cell area at about 12:37 a.m.   (Doc. # 95-3).   At approximately 12:38 a.m., Cox left the booking room to call an ambulance.[2]   (Doc. #81-5).

As a dispatcher, Cox did not go through peace officer certification or training.   (Doc. # 95-2 p. 28).   Cox had received no training or education on the use of a taser and had never seen a taser deployed.   (Doc. # 95-2 pp. 28-29).   Cox was not aware of how a person generally reacts

---

[2] Plaintiff has alleged in his Amended Complaint that:

34.   When the EMTs arrived over ten minutes later, Plaintiff Davis had stopped breathing.   He was blue, unconscious and unresponsive on the cell floor.   The EMTs immediately began Emergency resuscitation efforts, including CPR chest compressions and defibrillation.   After Plaintiff Davis was administered a defibrillator shock, his heart returned to a normal sinus rhythm.   He was thereafter intubated and transported to a hospital.

35.   Plaintiff Davis remained hospitalized for seven days.   He was diagnosed with anoxic encephalopathy (brain damage due to lack of oxygen).   As a direct and proximate result of the events at the City Jail, Plaintiff Davis suffered a traumatic brain injury, and has permanent brain damage, seizure disorder, short term memory loss, and suffers a permanent disability.   He can no longer work or take care of himself.   He cannot make decisions, communicate effectively, or function in society.

(Doc. 79, Plaintiff's Third Amended Complaint at para. 33-34).

after being tased.   (Doc. # 95-2 pp. 77-78).   Cox had never been told that if someone who had been tased did not move for an extended period of time, she was required to check on them, (Doc. # 95-2 p. 53), nor did she have any familiarity with tasers prior to this incident.   (Doc. # 95-2 p. 61).

## II.      Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact.   *Celotex*, 477 U.S. at 323.   Once the moving party has met its burden, the Rule requires the non-moving party to go beyond the pleadings and -- by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file -- designate specific facts showing that there is a genuine issue for trial. *See id*. at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant.   *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).   A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   *Anderson*, 477 U.S. at 248.   If the evidence is merely colorable, or is not significantly probative, summary judgment may be

4

granted. *See id.* 249.

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson v. Liberty Lobby, Inc.* teaches, Rule 56(c) "does not allow the plaintiff to simply rest on his allegations made in the complaint; instead, as the party bearing the burden of proof of trial, he must come forward with at least some evidence to support each element essential to his case at trial." *Anderson*, 477 U.S. at 252. "Mere allegations" made by plaintiffs are insufficient. *Id.*

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Southwest Airlines Co.*, 243 F. Supp.2d 1257, 1262 (D.Kan. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so onesided that one party must prevail as a matter of law.'" *Sawyer*, 243 F. Supp.2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp.2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear … that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

5

III.     **Discussion**

Plaintiff has sued Cox under 42 U.S.C. § 1983 and alleges that she was deliberately indifferent to his serious medical needs.   He also asserts state law negligence and wantonness claims.   (Doc. # 79).   Obviously, Cox is not the only defendant sued in this case; Plaintiff has also sued the City of Fultondale and the officers involved in the events leading up to (and including) his tasing—Henderson and Hale.   The Eleventh Circuit has made clear that each individual defendant must be judged separately based on what each person knows and did. *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008).

A.      **Cox Is Entitled To Summary Judgment On Plaintiff's Section 1983 Claim Alleging Deliberate Indifference To A Serious Medical Need**

Plaintiff contends that Cox was deliberately indifferent to his serious medical needs in violation of section 1983.   The Eighth Amendment prohibits cruel and unusual punishment, which includes deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).   Claims of deliberate indifference to serious medical needs arise under the Eighth Amendment when the claimant is a convicted prisoner.   However, when a section 1983 Plaintiff is a pre-trial detainee, the claim must be asserted under the Fourteenth Amendment. *Gilmore v. Hodges*, 738 F.3d 266, 271 (11th Cir. 2013).   In any event, the minimum standard for providing medical care to a pretrial detainee is identical to the minimum standard required by the Eighth Amendment for a convicted prisoner, and courts analyze the claim under the decisional law of both amendments.   *Id*.

"Our cases have consistently held that knowledge of the need for medical care and an intentional refusal to provide that care constitutes deliberate indifference." *Adams v. Poag*, 61 F.3d 1537, 1543-44 (11th Cir. 1995) (citing *Carswell v. Bay Cnty.*, 854 F.2d 454, 457 (11th Cir. 1988);

*Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985)).   However, not every claim of inadequate medical treatment states a cognizable claim under the federal constitution. *Id*. "Medical treatment [is deliberately indifferent] only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (citation omitted) (Eighth Amendment case).

To establish that a jail official was deliberately indifferent to his serious medical need, a prisoner must meet both an objective and a subjective standard of proof. *Campbell v. Sikes*, 169 F.3d 1353, 1363 (11th Cir. 1999).

To establish the objective component, a prisoner is required to show both (1) an objectively serious medical need that, if left unattended, poses a substantial risk of serious harm, and (2) that the response by the prison official to that need was poor enough to constitute an unnecessary and wanton infliction of pain.   *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000).   An objectively serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (internal quotation marks omitted).   In "delay in treatment" cases, even when treatment is ultimately provided, deliberate indifference may be "inferred from an unexplained delay in treating a known or obvious serious medical condition." *Harris v. Coweta Cnty.*, 21 F.3d 388, 394 (11th Cir. 1994).

To establish the subjective component, a prisoner must establish three factors: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) that the conduct complained of is more than merely negligent. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). Additionally, as with any tort claim, the prisoner must show that an injury was caused by

the defendant's wrongful conduct. *See Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995).   It is not enough to show that the care provided was less than optimal, or that a different course of treatment might have been preferable. The required subjective elements of a deliberate indifference claim ensure that "mere accidental inadequacy, negligence in diagnosis or treatment, [and] even medical malpractice" are not actionable under section 1983. *Taylor*, 221 F.3d at 1258. A prisoner also cannot establish a violation simply because he "may have desired different modes of treatment" than that which was provided to him. *Hamm v. DeKalb County*, 774 F.2d 1567, 1576 (11th Cir. 1985). Such a course of treatment claim, by definition, involves the "exercise of professional judgment" and as such is not actionable. *Estelle*, 429 U.S. at 105.

### 1. Plaintiff Has Failed To Show That Cox Was Indifferent to An Objectively Serious Medical Need

As discussed above, to establish that Plaintiff had an objectively serious medical need, Plaintiff must present evidence either that he had a medical need that either was diagnosed by a physician as mandating treatment, or was so obvious that even a lay person would easily recognize the necessity for a doctor's attention.   *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). Here, there was no physician-diagnosed condition.   Therefore, the question is whether it would have been obvious to a lay person that Plaintiff needed medical attention.   Here the facts are undisputed—although Cox was unfamiliar with how tasers work and their effects, within about a minute of seeing that Plaintiff had been tased, Cox called for medical help.   (Doc. # 95-1 p. 2).

Plaintiff appears to argue that Cox's indifference stems not from a failure to obtain medical attention, but the urgency (or lack thereof) with which it was provided.   More specifically, Plaintiff argues Cox was indifferent because, when she called a fire and rescue unit, she did not specify that it was an emergency, and she failed to check on Plaintiff again after calling for medical

8

help.

Cox called for medical attention within a minute of seeing that Plaintiff had been tased and specified the medical issue which was presented—she told the Fultondale Fire & Rescue personnel that Plaintiff had been tased.  Thereafter, medical personnel were on the scene within eleven minutes.  The evidence before the court does not establish that it should have been obvious to a lay person that Plaintiff needed *more immediate* medical attention than that provided.  Cox called the paramedics, she heard someone say he was asleep, and what she saw on the monitor was consistent with a sleeping inmate.  At least with respect to Cox, nothing about this course of events shows any deliberate indifference to an objectively serious medical need.

### 2.     Plaintiff Failed To Show Cox Had Subjective Knowledge Of A Serious Medical Need

Even if the facts showed a deliberate indifference to an *objectively* serious medical need (and, to be clear, they do not), Plaintiff must also show that Cox *subjectively* perceived a serious medical need to which she was indifferent.   Here, Plaintiff has again failed to meet his burden.

After Cox made her initial call for medical help to Fire and Rescue, one of the officers indicated to Cox that Plaintiff was snoring.  (Doc. # 95-2 p. 46; Doc. # 84-2 p. 30-31).  Cox testified that Plaintiff appeared to be asleep, which was consistent with what she had heard from one of the officers.  (Doc. # 95-2 p. 47, 60).  Further, in Cox's experience, it was not unusual for an inmate to sleep on the floor.  (Doc. # 95-2 p. 61).  No evidence has been presented that Cox had any subjective knowledge that Plaintiff was in distress.

"Each individual Defendant must be judged separately and on the basis of what that person knows." *Burnette*, 533 F.3d at 1331.  Plaintiff has not presented evidence that Cox (1) had subjective knowledge of a risk of serious harm to Plaintiff as a result of his being tased, and (2)

9

disregarded that risk. Cox had already called for medical help and reported that the issue was that Plaintiff had been tased.   Thereafter the paramedics were on the scene within about ten minutes. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer v. Brennan*, 511 U.S. 825, 838 (1994).   Plaintiff has not shown that Cox was subjectively aware that Plaintiff had a serious medical need that required *more immediate* medical attention than that for which she had already called for help.

Summary judgment is appropriate here because the undisputed evidence does not show deliberate indifference by Cox to either an objectively serious medical need or one that she subjectively perceived.

**B.      Qualified Immunity Bars Plaintiff's Section 1983 Claim**

Cox also argues that she is entitled to qualified immunity.   "Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Andujar v. Rodriguez*, 486 F.3d 1199, 1202 (11th Cir. 2007) (internal quotation marks omitted). "An official asserting the affirmative defense of qualified immunity must initially establish that he was acting within his discretionary authority." *Skop v. City of Atlanta, Georgia*, 485 F.3d 1130, 1136 (11th Cir. 2007). "If the official was acting within the scope of his discretionary authority ... the burden shifts to the plaintiff to show that the official is not entitled to qualified immunity." *Id*. at 1136-37.   Here, Plaintiff has not challenged the assertion that Cox was at all times acting within the scope of her discretionary authority. Moreover, the Third Amended Complaint alleges that Cox was working in her capacity of

dispatcher during the relevant time frame.   (Doc. # 79 at ¶¶  9-10).

Therefore, "[t]o overcome qualified immunity, [] plaintiff must satisfy a two prong test; he must show that: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004). "The threshold inquiry" a court must consider in a qualified immunity analysis is whether Plaintiff has alleged a constitutional violation.   *Hope v. Pelzer*, 536 U.S. 730, 736 (2002). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

As discussed above, Plaintiff has failed to present evidence establishing a constitutional violation.   That is, Plaintiff has not presented evidence that Cox was deliberately indifferent to a serious medical need.   With the benefit of hindsight, Plaintiff now contends that Cox should have acted with more urgency in seeking medical treatment. But at the time, Cox was not aware of any facts which indicated that Plaintiff was suffering from an obviously life threatening condition. Under these circumstances, Plaintiff's allegations (and the undisputed evidence) do not give rise to a constitutional claim. The facts demonstrate that, at most, Cox may have been negligent; but to establish a deliberate indifference claim, Plaintiff must demonstrate facts showing conduct that was more than negligent.

In addition, for all these same reasons, Plaintiff has not demonstrated that a reasonable officer in the place of Cox would have known that she was violating the clearly established rights of Plaintiff in acting (or even allegedly failing to act) as Cox did.   Therefore, Cox is entitled to judgment as a matter of law on the basis of qualified immunity on Plaintiff's section 1983 claim.

**B.      Defendant Is Entitled To State Agent Immunity On Plaintiff's State Law
        Claims**

Plaintiff's only argument that Cox is not entitled to state agent immunity is that "a State

agent shall not be immune from civil liability in his or her personal capacity when the Constitution

... of the United States ... require[s] otherwise."   (Doc. # 96 at 26 (quoting *Ex parte Kennedy*, 992

So.2d 1276, 1282-1283 (Ala. 2008)).   Thereafter, Plaintiff simply incorporates the arguments he

made previously in support of claim that there had been a constitutional violation.

Plaintiff does not dispute that a police dispatcher is a peace officer as contemplated by § 6–

5–338.   "Therefore, for purposes of this appeal we assume that the police dispatcher in this case is

a 'peace officer.'"   *Swan v. City of Hueytown,* 920 So.2d 1075, 1079-80 (Ala. 2005) (citing

*Howard v. City of Atmore*, 887 So.2d 201, 203 (Ala. 2003)( (a sworn law-enforcement officer who

was serving as a jailer/dispatcher while recuperating from surgery was a "peace officer" within the

meaning of § 6–5–338) and *Houston County Comm'n v. Hart*, 477 So.2d 321, 322 (Ala. 1985) (a

dispatcher is a trained law-enforcement officer and thus entitled to the minimum starting salary for

all county law-enforcement officers)).

Ala. Code § 6–5–338 provides that:

> [e]very peace officer ... shall at all times be deemed to be [an] officer [ ] of this
> state, and as such shall have immunity from tort liability arising out of his or her
> conduct in performance of any discretionary function within the line and scope of
> his or her law enforcement duties.

The test set out in *Ex parte Cranman*, 792 So.2d 392 (Ala. 2000), defines Alabama's doctrine of

state-agent immunity. The same test in *Cranman* for deciding state-agent immunity questions

"governs whether law enforcement officers are entitled to statutory, discretionary-function

immunity under § 6–5–338(a)." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 741 (11th Cir.

2010). Under *Cranman*,

> [a] State agent shall be immune from civil liability in his or her personal capacity
> when the conduct made the basis of the claim against the agent is based upon the
> agent's ….
>
> (4) exercising judgment in the enforcement of the criminal laws of the State,
> including, but not limited to, law-enforcement officers' arresting or attempting to
> arrest persons, *or serving as peace officers* under circumstances entitling such
> officers to immunity pursuant to § 6–5–338(a).

*Hollis v. City of Brighton*, 950 So.2d 300 (Ala. 2006) (modifying category (4) of *Ex parte
Cranman*) (emphasis added).   Cox was engaged in a discretionary function in determining what
actions to take following Plaintiff's tasing. *See Byrd v. Sullivan*, 657 So. 2d 830, 833 (Ala. 1995)
(determining whether student needed emergency medical treatment was discretionary function).
Cox was also engaged in a discretionary function when monitoring Plaintiff from her dispatch
office prior to the arrival of the paramedics.   *See Id.*

By enacting section 6–5–338, the Alabama Legislature intended to afford municipal peace
officers the immunity enjoyed by their state counterparts.   *Ex parte Dixon*, 55 So.3d 1171, 1176
(Ala. 2010); *Sheth v. Webster*, 145 F.3d 1231, 1237 (11th Cir. 1998).   By its very terms, the
statute extends state-agent immunity to peace officers performing discretionary functions within
the line and scope of their duties.   *Ex parte Dixon*, 55 So.3d at 1176; *Moore v. Crocker*, 852 So.2d
89, 90 (Ala. 2002).   Discretionary functions have been deemed to be "those acts as to which there
is no hard and fast rule as to the course of conduct that one must or must not take, and those acts
requiring exercise in judgment and choice and involving what is just and proper under the
circumstances." *Moore v. Adams*, 754 So.2d 630, 632 (Ala. 1999) (citing *Wright v. Wynn*, 682
So.2d 1, 2 (Ala. 1996), and *L.S.B. v. Howard*, 659 So.2d 43 (Ala. 1995)).

Plaintiff's state law negligence and wantonness claims against Cox are based on events occurring while she was engaged in a discretionary function.   Therefore, she is entitled to the presumption of state-agent immunity on those claims.   Peace officers are immune from liability for conduct involving discretionary acts unless the "conduct is so egregious so as to amount to willful or malicious conduct or conduct engaged in bad faith." *Hawkins v. City of Greenville*, 101 F.Supp.2d 1356, 1362 (M.D. Ala. 2000).   Plaintiff has presented no such evidence here. Therefore, consistent with the court's Rule 56 findings and ruling on Cox's assertion of qualified immunity, Cox is also entitled to state-agent immunity on these claims.

## IV.  Conclusion

For the foregoing reasons, Defendant Cox is entitled to summary judgment on all of Plaintiff's claims against her.

A separate order will be entered.

**DONE** and **ORDERED** this August 4, 2015.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE